**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**D'Andre TORRES, a/k/a Danny Scott,**
**a/k/a D, Defendant–Appellant.**

No. 98–7657.

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 23, 1999

Decided: May 3, 2000

**ARGUED:** Aaron Peter Buda, Schad, Buda, Cook, L.L.C., Cincinnati, Ohio, for Appellant. David S. Kris, United States Department of Justice, Washington, D.C., for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Brian L. Whisler, Assistant United States Attorney, United States Department of Justice, Washington, D.C., for Appellee.

Before LUTTIG and WILLIAMS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge WILLIAMS wrote the majority opinion, in which Judge LUTTIG joined. Senior Judge HAMILTON wrote a dissenting opinion.

## OPINION

**WILLIAMS, Circuit Judge:**

D'Andre Torres filed a motion for collateral relief under 28 U.S.C.A. § 2255 (West Supp.1999), asserting that his conviction for conspiring to possess with intent to distribute cocaine base in violation of 21 U.S.C.A. § 846 (West 1999) should be overturned because of several alleged constitutional defects in his trial. The United States District Court for the Western District of North Carolina denied the motion on the ground that it was filed outside the one-year limitation period of § 2255, which gives a federal prisoner[1] one year from the date his conviction becomes final to commence a collateral attack on the conviction by filing a motion under that section. Torres appeals, claiming that, for purposes of § 2255, a federal prisoner's judgment of conviction is not final until the expiration of the ninety-day period he has to file a petition for certiorari to the Supreme Court—even if that prisoner, like Torres, chose not to file a petition for certiorari. Torres contends that because his conviction did not become final for purposes of § 2255 until the expiration of ninety days after this Court's entry of judgment on his direct appeal, his § 2255 motion was timely filed. We reject Torres's argument and hold that, for purposes of § 2255, the conviction of a federal prisoner whose conviction is affirmed by this Court and who does not file a petition for certiorari becomes final on the date that this Court's mandate issues in his direct appeal. Accordingly, we affirm the district court's dismissal of Torres's § 2255 motion as untimely.

### I.

On August 1, 1995, D'Andre Torres was convicted of one count of conspiring to possess with intent to distribute cocaine base in violation of 21 U.S.C.A. § 846 (West 1999). He was sentenced to 360 months in jail and five years supervised release. On May 19, 1997, a panel of this Court affirmed his conviction on direct appeal. *See United States v. Torres,* 113 F.3d 1233 (4th Cir.1997) (unpublished). Torres did not file a petition for rehearing, and this Court issued its mandate on June 10, 1997. Torres thereafter did not file a petition for certiorari with the Supreme Court.

Torres asserts that on August 16, 1998, he filed a motion for collateral relief under 28 U.S.C.A. § 2255 (West Supp.1999) with the United States District Court for the Western District of North Carolina by placing that motion in his prison's mail system. In that motion, Torres claimed that there were several constitutional defects in his trial, including ineffective assistance of counsel in violation of the Sixth Amendment, a violation of his Fifth Amendment right to due process, and a violation of his Sixth Amendment right to a fair trial. The district court, without requiring a response from the Government, denied the motion on the ground that it was filed outside the one-year limitation period of § 2255. The district court found that Torres had filed his motion on August 24, 1998, and that Torres's judgment of conviction had become final on June 12, 1997.[2] Thus, the district court concluded that Torres had filed his § 2255 motion after the expiration of the one-year limitation period provided by § 2255, and it dismissed his motion as untimely.[3] We

---

1. For purposes of this opinion, the term "federal prisoner" refers to a prisoner in custody under the sentence of a federal court. The term "state prisoner" refers to a prisoner in custody under the sentence of a state court.

2. The district court determined that the judgment of conviction became final on June 12, 1997. Because that date is two days after this Court issued its mandate, we assume that the

district court referred to the date on which our mandate was entered on the district court's docket.

3. Torres argues that the prison mailbox rule announced in *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), should apply to his § 2255 motion and that the motion should be treated as if it had been directly filed with the district court on August

now consider Torres's timely appeal from the district court's decision.

## II.

The issue we are called upon to decide is this: When, under 28 U.S.C.A. § 2255 (West Supp.1999), does a federal prisoner's judgment of conviction become final if that prisoner decided not to file a petition for certiorari in the Supreme Court after an unsuccessful direct appeal to this Court? Torres contends that his judgment of conviction did not become final until August 17, 1997, which is exactly ninety days after this Court, on May 19, 1997, affirmed his conviction on direct appeal. According to his offered reading of § 2255, his judgment of conviction did not become final, and § 2255's one-year limitation period did not begin running, until the expiration of ninety days after the entry of judgment during which he could have filed—but did not—a petition for certiorari.[4] On this appeal, the Government agrees with Torres's offered reading of § 2255.

Like all federal prisoners now seeking relief under § 2255, Torres brings his case

in the wake of Congress's enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). This statute provides a one-year limitation period for the filing of § 2255 motions by federal prisoners. Previously, there was no time limit in which a federal prisoner could collaterally attack his conviction by filing a § 2255 motion.[5] The AEDPA amended § 2255 to read, in relevant part:

> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final. . . .

28 U.S.C.A. § 2255 (West Supp.1999).

Thus, Congress has declared that the one-year limitation period in which a federal prisoner such as Torres can file a § 2255 motion begins to run on the date on which that prisoner's judgment of conviction becomes final.[6] Congress did not explicitly state when a judgment of conviction becomes final, and there is a disagreement among our sister circuits as to when,

16, 1998, rather than on August 24, the date on which the district court indicated that the motion was filed. Because, under our holding today, Torres's § 2255 motion was untimely even if the mailbox rule applied to the motion, we need not address this argument.

4. Rule 13.1 of the Supreme Court Rules provides that a petition for certiorari is timely only if it is filed within 90 days of the entry of the judgment of a state court of last resort or the United States Court of Appeals. We note that the entry of judgment and the issuance of the mandate are separate events. "A judgment is entered when it is noted on the docket." Fed. R.App. P. 36. A petition for panel rehearing or rehearing en banc must be filed within 14 days after the entry of judgment. *See* Fed. R.App. P. 40(a)(1); 35(c). The mandate, which contains "a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs," is issued "7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, rehearing en banc, or motion for stay of mandate, whichever is later." Fed. R.App. P. 41(a) and (b).

5. The former version of § 2255 expressly provided that "[a] motion for such [collateral] relief may be made at any time." 28 U.S.C.A. § 2255 (West 1994).

6. The rest of that portion of § 2255 that marks the start of the limitation period lists the following dates that are not relevant to the issue before us:

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255 (West Supp.1999)

for purposes of § 2255, a judgment of conviction becomes final in the situation where a federal prisoner decides not to file a petition for certiorari to the Supreme Court. *Compare Gendron v. United States,* 154 F.3d 672, 674 (7th Cir.1998) (holding that, when a federal prisoner does not file a petition for certiorari, his judgment of conviction becomes final under § 2255 upon the issuance of the court of appeal's mandate), *cert. denied,* —— U.S. ——, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999), *with United States v. Gamble,* 208 F.3d 536 (5th Cir.2000) (holding that, when a prisoner does not file a petition for certiorari, his judgment of conviction does not become final under § 2255 until the time for filing a certiorari petition expires), *United States v. Burch,* 202 F.3d 1274, 1279 (10th Cir.2000) (same), *and Kapral v. United States,* 166 F.3d 565, 577 (3d Cir. 1999) (same). For the reasons that follow, we believe that the Seventh Circuit holds the better view.

In declaring that § 2255's one-year limitation period begins to run on the date on which a prisoner's judgment of conviction becomes final, Congress was presumably aware that a federal defendant's judgment of conviction becomes final for purposes of collateral attack at the conclusion of direct review. In our system of federal courts, it is generally accepted that, for a defendant who files a petition for certiorari with the Supreme Court, the conclusion of direct review occurs when the Supreme Court either denies his petition or decides his case on the merits. After the Supreme Court does either of these two things, the defendant's judgment of conviction is final because literally nothing more occurs on direct review.

Congress, then, drafted the text of § 2255 against a backdrop in which the Supreme Court's denial of a federal prisoner's petition for certiorari or its resolution of his case on the merits represents the conclusion of direct review. Congress almost certainly did not consider the situation in which a federal defendant, upon the affirmance of his conviction by a court of appeals, exercises his prerogative *not* to file a petition for certiorari. Thus, we think that in addressing the present case, which involves this very situation, it is important to hew as closely as possible to the actual text of the statute. Here, we believe that, as both a logical and textual matter, where a defendant decides not to pursue relief in the Supreme Court, his conviction becomes final upon the issuance of the court of appeal's mandate. This must be the case, we believe, because, in such a circumstance, literally nothing else thereafter occurs following the issuance of the mandate by the appellate court.

We find support for our holding by juxtaposing the text of § 2255 with the text of 28 U.S.C.A. § 2244 (West 1994 & Supp. 1999). Just as the AEDPA amended § 2255 to provide a one-year limitation period for federal prisoners to file their § 2255 motions, it amended § 2244 to provide a one-year limitation period for state prisoners to file their habeas petitions. In § 2244, Congress specifically stated that the one-year limitation period will run from the time that a state judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."[7] 28 U.S.C.A. § 2244(d)(1)(A). In using this phrase, Congress offered two dates from which its one-year limitation period can begin run-

---

7. Before the enactment of the AEDPA, § 2244 simply included no mention of a limitation on the time in which a state prisoner could commence a collateral attack on his conviction. *See* 28 U.S.C.A. § 2244 (West 1994). The current version of § 2244(d)(1) reads, in relevant part, as follows:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C.A. § 2244(d)(1)(A) (West Supp. 1999).

ning: (1) at the conclusion of direct review or (2) at the expiration of time in which further direct review could have been sought, but was not. Congress, therefore, expressly provided an alternative starting date for its limitation period in the circumstance where a state defendant fails to seek further direct review of his conviction. The language Congress used, "by the conclusion of direct review or the expiration of the time for seeking such review," expands the period of time before the start of the limitation period for filing a habeas petition beyond the date that marks the conclusion of direct review of that judgment. The absence of this language in § 2255 provides a powerful negative inference that the start of its one-year period of limitation is not delayed until the expiration of the period in which a federal defendant could have petitioned for certiorari, but did not.

Our holding finds further support in a comparison of § 2255 with 28 U.S.C.A. § 2263 (West Supp.1999), which sets forth a limitation period for the filing of habeas petitions by state prisoners who are serving capital sentences in qualifying states.[8] Section 2263(a) states that its 180–day limitation period begins "after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review." 28 U.S.C.A. § 2263(a). We find it significant that Congress did not choose, as it did in § 2263, to use language in § 2255 that affirmatively expands the period of time before the start of the limitation period for filing a § 2255 motion.[9] Torres and the Government attempt to use § 2263 to bolster their interpretation of § 2255, noting that, in § 2263, although the limitation period for filing a habeas petition begins to run before a state capital prisoner files a petition for certiorari, that limitation period is tolled from the moment that a certiorari petition is filed. *See* 28 U.S.C.A. § 2263(b)(1). The absence of a similar tolling provision in § 2255, they assert, means that Congress assumed that no tolling provision was needed in that section because a judgment of conviction does not become final until the time for filing a petition for certiorari has expired. This argument fails, not only because of the aforementioned difference in the language of § 2255 and § 2263(a), but also because the limitation period of § 2263(a) is tolled under § 2263(b)(1) only if a petition for certiorari is filed. The absence of a parallel tolling provision in § 2255 can therefore provide no reliable guidance as to how that section should be applied to federal prisoners who do not file a petition for certiorari and therefore fail to extend their period of direct review.

Because this Court issued its mandate affirming Torres's criminal conviction on

8. Section 2263 is part of Chapter 154 of Title 28. This chapter sets forth the procedures that govern petitions filed under 28 U.S.C.A. § 2254 (West 1994 & Supp.1999) by state prisoners serving capital sentences in states that meet certain conditions set forth in 28 U.S.C.A. § 2261 (West Supp.1999). The relevant portion of 28 U.S.C.A. § 2263 reads as follows:

(a) Any application under this chapter for habeas corpus relief under section 2254 must be filed in the appropriate district court not later than 180 days after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review.

(b) The time requirements established by subsection (a) shall be tolled—

(1) from the date that a petition for certiorari is filed in the Supreme Court until

the date of final disposition of the petition if a State prisoner files the petition to secure review by the Supreme Court of the affirmance of a capital sentence on direct review by the court of last resort of the State or other final State court decision on direct review....

28 U.S.C.A. § 2263 (West Supp.1999).

9. Although § 2263(a) is referring only to the direct review that occurs within a state court system, the power of the negative inference here is not diminished. The crucial point is that, in § 2263(a), Congress used language that delayed the start of a limitation period until after a period of time in which further direct review could have been sought, even if it was not. Congress did not use this same language in § 2255.

June 10, 1997, and because Torres never filed a petition for certiorari, his judgment of conviction became final on that date.[10] Torres, therefore, had until June 10, 1998, to file his § 2255 motion. Even if we assume, without deciding, that the prison mailbox rule applies to his motion and that he gave his motion to prison authorities on August 16, 1998, as he says he did, Torres filed his motion more than two months out of time. Therefore, the district court correctly dismissed Torres's § 2255 motion as untimely.

## III.

Four other circuits have addressed the issue presented by this case. Our holding is in accord with the Seventh Circuit's resolution of the issue: "[F]ederal prisoners who decide not to seek certiorari with the Supreme Court will have the period of limitations[in § 2255] begin to run on the date this court issues the mandate in their direct criminal appeal." *Gendron v. United States*, 154 F.3d 672, 674 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999). In contrast, the Third Circuit has held that, under § 2255, the judgment of conviction for a defendant who fails to file a petition for certiorari does not become final until the expiration of the period in which he could have filed a petition for certiorari. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Recently, the Fifth and Tenth Circuits have joined the Third Circuit in this holding, adopting almost entirely the reasoning of the *Kapral* opinion. *See United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000); *United States v. Burch,* 202 F.3d 1274, 1276–79 (10th Cir.2000).[11] We find it significant that the *Kapral* court reached its result primarily by emphasizing policy considerations instead of focusing on the language of § 2255. For example, in supporting its holding that, for purposes of § 2255, the one-year limitation period for a federal prisoner who fails to file a petition for certiorari runs from the last date on which a petition could have been filed, the *Kapral* court thought it would be wise, as a matter of policy regarding the administration of direct and collateral proceedings, to use "the concept of finality under a *Teague* analysis."[12] *Id.* at 572. First, we observe that there is no necessary reason to conclude that Congress intended to import the judicially created concept of finality for purposes of a *Teague* retroactivity analysis into the context of the limitation periods of either § 2244 or § 2255. Sec-

---

**10.** The district court's use of June 12 as the date on which the judgment of conviction became final is insignificant because, even if this Court's mandate had issued on that day, Torres still would have been at least two months late in filing his § 2255 motion.

**11.** Both the Ninth and the Eleventh Circuits have noted the existence of the circuit split, but they have not had the chance to rule on the issue we now address. *See United States v. Colvin*, 204 F.3d 1221, 1223–24 (9th Cir. 2000); *Adams v. United States*, 173 F.3d 1339, 1342–43 (11th Cir.1999).

**12.** Under the nonretroactivity rule of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), a state prisoner collaterally attacking his conviction does not receive the benefit of a "new constitutional rule[ ] of criminal procedure" that is announced after his conviction became final unless that rule falls within one of two narrow exceptions. *See id.* at 310, 109 S.Ct. 1060; *Caspari v. Bohlen*, 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). In applying *Teague* to state prisoners who did not file certiorari petitions, the Supreme Court has said that, for the purpose of retroactivity analysis, the prisoners' convictions were final on the date on which the time for filing a petition for certiorari expired. *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 527, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Caspari*, 510 U.S. at 390–91, 114 S.Ct. 948. While the Supreme Court has not directly held that *Teague*'s nonretroactivity rule applies to actions for collateral relief under § 2255, we have. *See United States v. Martinez*, 139 F.3d 412, 415–16 (4th Cir.1998), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999) (deciding to apply *Teague*'s nonretroactivity rule to actions under § 2255, but not addressing the specific question of when a federal defendant's conviction becomes final, for purposes of *Teague* retroactivity analysis, in the situation where no petition for certiorari is filed).

ond, even if by using the words "by the conclusion of direct review or the expiration of the time for seeking such review" in § 2244(d)(1)(A), Congress invoked a *Teague*–like concept of finality, Congress's failure to do so in § 2255 raises a negative inference that should not be ignored. Furthermore, the *Kapral* court's concern that starting to run § 2255's limitation period when the mandate is issued would somehow force a federal prisoner to file his petition for certiorari and § 2255 motion simultaneously, *see id.*, ignores that the relevant factual situation is one in which a prisoner did not file a petition for certiorari. In this situation, we simply cannot see the logic in the assertion that starting to run the one-year limitation period before the expiration of the time in which the prisoner could have petitioned for certiorari harms a prisoner by forcing him to prepare a petition for certiorari and a § 2255 motion simultaneously. A prisoner who chooses not to file a petition for certiorari simply never faces that dilemma.

## IV.

For the foregoing reasons, we hold that Torres filed his § 2255 motion after the one-year limitation period expired, and we affirm the decision of the district court to dismiss the motion as untimely.

*AFFIRMED*

HAMILTON, Senior Circuit Judge, dissenting:

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, 110 Stat. 1214, a federal prisoner could file a § 2255 motion "at any time." 28 U.S.C. § 2255 (former version). The current version of § 2255 imposes a one-year period of limitation and provides that this period of limitation shall run from the latest of four specified dates. One of those dates is "the date on which the judgment of convic-

tion becomes final." 28 U.S.C. § 2255(1). This is the language at issue in this case, and the rub in this case, as recognized by the majority, *see ante* at 838–39, is that § 2255 does not define when a judgment of conviction becomes "final" for purposes of starting the period of limitation.

Four circuits have squarely addressed the issue of when a conviction becomes "final" for purposes of § 2255. The Seventh Circuit has held that, at least in a case in which the federal prisoner does not seek further review of his conviction beyond the court of appeals, a judgment of conviction becomes final when the highest court to consider the case issues its mandate. *See Gendron v. United States*, 154 F.3d 672, 674 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999). The Seventh Circuit's holding in *Gendron* is tied to the textual difference between § 2244(d)(1)(A), which is applicable to collateral review of state court convictions, and § 2255, which is applicable to collateral review of federal court convictions. Just as § 2255 provides a one-year period of limitation, so too does § 2244(d)(1), and § 2244(d)(1) provides that this period of limitation shall run from the latest of four specified dates. One of those dates is "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review." *Id.* § 2244(d)(1)(A). In *Gendron*, the Seventh Circuit reasoned that "[w]here Congress includes particular language in one section of an act but omits it in another section of the same act, it is presumed that Congress intended to exclude the language, and the language will not be implied where it has been excluded." 154 F.3d at 674.[1] Noting that Congress included the phrase "by the conclusion of direct review or the expiration of the time for seeking such review" in § 2244(d)(1)(A) but omitted the phrase from § 2255(1), the *Gendron* court concluded that the date on which a judgment

---

1. This principle is commonly referred to as the *Russello* presumption. *See Russello v.*

*United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

of conviction becomes final must mean something different under § 2255(1) than it does under § 2244(d)(1)(A). *See Gendron*, 154 F.3d at 674. Based on this conclusion, the *Gendron* court held that under § 2255(1) a judgment of conviction becomes final when the court of appeals issues its mandate. *See Gendron*, 154 F.3d at 674.

In contrast to *Gendron*, the Third, Fifth, and Tenth Circuits take the view that a judgment of conviction becomes final under § 2255(1) when a federal prisoner's options for further direct review are foreclosed, rather than when the highest court to consider the case issues its judgment. Thus, those courts hold that the judgment of conviction becomes final on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the federal prisoner's timely filed petition for writ of certiorari, or (2) the date on which the federal prisoner's time for filing a timely petition for writ of certiorari expires. *See United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000); *United States v. Burch*, 202 F.3d 1274, 1279 (10th Cir.2000); *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

In *Kapral*, the Third Circuit rejected the reasoning of *Gendron*, concluding that longstanding principles of finality in the collateral review context outweigh any inference that could be drawn from the textual difference between § 2241(d)(1)(A) and § 2255(1). *See Kapral*, 166 F.3d at 570–77. The Third Circuit also criticized the *Gendron* court for not taking 28 U.S.C. § 2263 into account when trying to divine what Congress intended in § 2255(1).[2] *See Kapral*, 166 F.3d at 576–77. Section

2263 deals with certain habeas petitions for collateral review of state court convictions involving the death penalty. Section 2263(a) provides that a federal habeas petition must be filed within 180 days "after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review." The Third Circuit reasoned that

> Congress's use of "State court" to modify the well-settled meaning of direct review (which includes the right to seek review in the Supreme Court), provides strong support for the conclusion that the limitations periods under § 2244 and § 2255—which lack an analogous modifier—run from the conclusion of Supreme Court review.

*Kapral*, 166 F.3d at 576. The Third Circuit also noted that both § 2244(d)(1)(A) and § 2255(1) explicitly tie the applicable period of limitation to the "finality" of a conviction, rather than an "affirmance" of that conviction, as does § 2263. *See Kapral*, 166 F.3d at 576. The Third Circuit also observed that § 2263 provides that the period of limitation is "tolled" by the filing of a petition for writ of certiorari, *see* 28 U.S.C. § 2263(b)(1). *See Kapral*, 166 F.3d at 576. Tolling is necessary under that section because the period of limitation starts to run before the time period for Supreme Court certiorari review begins. *See id.* The Third Circuit reasoned that the absence of any analogous tolling provision for Supreme Court review in either § 2244 or § 2255 strongly suggests that Congress intended for the limitation provisions contained therein to begin after the time for certiorari review expired. *See Kapral*, 166 F.3d at 577.

---

2. In relevant part, § 2263 provides:

(a) Any application under this chapter for habeas corpus relief under section 2254 must be filed in the appropriate district court not later than 180 days after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review.

(b) The time requirements established by subsection (a) shall be tolled—

(1) from the date that a petition for certiorari is filed in the Supreme Court until the date of final disposition of the petition if a State prisoner files the petition to secure review by the Supreme Court of the affirmance of a capital sentence on direct review by the court of last resort of the State or other final State court decision on direct review. . . .

The Tenth Circuit's decision in *Burch* follows the reasoning of the Third Circuit's decision in *Kapral.* Of note, the court in *Burch* heavily criticized the *Gendron* court's invocation of the *Russello* presumption. The *Burch* court first noted that the presumption only is applicable in cases where the statute at issue is carefully drafted, which the AEDPA is not. *See* 202 F.3d at 1277. The court also noted that, "[h]ad the *Gendron* court truly applied the *Russello* principle and taken it to its logical conclusion, it would have held that a judgment of conviction is final for purposes of § 2255 when the trial court enters the judgment of conviction on the docket." *Burch,* 202 F.3d at 1278.[3]

From the above discussion, it seems clear that, when a federal prisoner appeals his conviction to the court of appeals, the phrase "the date on which the judgment of conviction becomes final" contained in § 2255(1) is ambiguous, as it is susceptible of two reasonable interpretations. On the one hand, the phrase may mean the date on which the last process of direct appeal occurs. *See Kapral,* 166 F.3d at 577 (Alito, J., concurring). On the other hand, the phrase "the date on which the judgment of conviction becomes final" reasonably may be interpreted to mean the date on which the conviction is no longer subject to reversal by means of the process of direct appeal. *See id.*

These two reasonable interpretations produce the same results except when a federal prisoner decides not to petition the Supreme Court for a writ of certiorari. As Judge Alito explained in *Kapral,*

> [t]hese two reasonable interpretations produce the same results in those cases in which the defendant exhausts the process of direct review, *i.e.,* appeals to the court of appeals and then petitions for a writ of certiorari. In those cases, the last step in the process of direct appeal occurs at the same time when the defen-

dant's conviction becomes immune from reversal on direct appeal, *i.e.,* when the Supreme Court denies certiorari or, if certiorari is granted, when the Supreme Court hands down its decision on the merits. These two interpretations, however, produce different results in those cases, such as this case and *Gendron,* in which the defendant does not exhaust the direct-review process. In cases like this one and *Gendron,* the last step in the process of direct appeal occurs when the court of appeals' judgment is entered, but the judgment of conviction does not become immune from reversal through the process of direct appeal until the time for petitioning for certiorari expired—generally 90 days after the entry of the court of appeals' judgment. *See* Supreme Court Rule 13.1. Thus, in those cases in which a defendant appeals to the court of appeals but does not seek certiorari, the first interpretation will generally give the defendant one year from the entry of judgment to file a § 2255 motion, whereas the second interpretation will generally give the defendant 15 months from the entry of the court of appeals' judgment to file that motion.

*Kapral,* 166 F.3d at 577–78 (Alito, J., concurring).

Whenever we are confronted with a situation in which we must accept one reasonable interpretation of a statute and reject another, the decision is exceedingly difficult. Such is the case here. Compounding the difficulty of the decision in this case is the absence of legislative history surrounding the enactment of § 2244(d)(1)(A) and § 2255(1). However, I am more persuaded by the *Kapral,* *Burch,* and *Gamble* courts' analyses of the relevant secondary tools of statutory interpretation than I am by the reasoning of the majority and *Gendron.* Accordingly, I would hold that, for purposes of § 2255(1),

---

**3.** The Fifth Circuit's decision in *Gamble* follows the reasoning of an earlier Fifth Circuit decision, *United States v. Thomas,* 203 F.3d 350, 354 (5th Cir.2000), wherein the court found the reasoning of *Kapral* persuasive. *See Gamble,* 208 F.3d at 536.

if a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court after his direct appeal, the one-year period of limitation begins to run when the time for filing a petition for writ of certiorari expires.

In its opinion, the majority relies on two main points to support its interpretation of § 2255(1). First, the majority relies on the fact that § 2255(1) refers to "the date on which the judgment of conviction becomes final," whereas § 2244(d)(1)(A) refers to "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See ante* at 839–40. According to the majority, the absence of the phrase "the expiration of the time for seeking such review" in § 2255(1) "provides a powerful negative inference that the start of its one-year period of limitation is not delayed until the expiration of the period in which a federal defendant could have petitioned for certiorari, but did not." *Ante* at 840.

Unlike the majority, I fail to see the "powerful negative inference." To begin with, the statutory text of § 2244(d)(1)(A) and § 2255(1) strongly suggests that the difference in language did not result from a careful drafting choice.[4] Indeed, a careful draftsman would have realized that, just as it was necessary in § 2244(d)(1)(A) to explain what was meant by the date on which the judgment of conviction became final, so too was it necessary to provide such an explanation in § 2255(1). In addition, the legislative history of § 2244(d)(1)(A) and § 2255(1) suggests that the textual difference between § 2241(d)(1) and § 2255(1) is "the product of the vagaries of the legislative process." *Kapral,* 166 F.3d at 580–81 (Alito, J., concurring) (reviewing the origins of § 2244(d)(1)(A) and § 2255(1)). Finally, it makes no sense to conclude that Congress intended to treat state and federal prisoners differently. *See Burch,* 202 F.3d at 1278; *Kapral,* 166 F.3d at 575.

The second point relied upon by the majority to support its interpretation of § 2255(1) is premised on § 2263, which sets forth a period of limitation for the filing of habeas petitions by state prisoners who are serving capital sentences in qualifying states. According to the majority, it is "significant that Congress did not choose, as it did in § 2263, to use language in § 2255 that affirmatively expands the period of time before the start of the limitation period for filing a § 2255 motion." *Ante* at 840. However the majority's analysis ignores the import of the phrase "final State court affirmance of the conviction and sentence on direct review." As the court in *Kapral* noted,

> Congress's use of "State court" to modify the well-settled meaning of direct review (which includes the right to seek review in the Supreme Court), provides strong support for the conclusion that the periods of limitation language in §§ 2244(d)(1) and 2255—which lack an analogous modifier—run from the conclusion of Supreme Court review. In §§ 2244(d)(1) and 2255, Congress spoke in terms of "finality," not in terms of "affirmance."

*Kapral,* 166 F.3d at 576. Moreover, the absence of any analogous tolling provision for Supreme Court review in either § 2244 or § 2255 strongly suggests that Congress intended for the limitation provisions contained therein to begin after the time for certiorari review expired. *See Kapral,* 166 F.3d at 577.

Finally, in deciding which reasonable interpretation should control, I find the Supreme Court's definition of "final judgment" in the context of the doctrine of retroactivity instructive. In *Griffith v. Kentucky,* 479 U.S. 314, 320–21, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court sum-

---

4. For this reason, unlike the Seventh Circuit in *Gendron,* the majority in this case wisely does not rely on the *Russello* presumption.

marized the history of its retroactivity analysis. In that context, the Court stated that a conviction that is "final" means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Id.* at 321 n. 6, 107 S.Ct. 708. I simply cannot see how Congress' omission of the phrase "by the conclusion of direct review or the expiration of time for seeking such review" in § 2255(1) means that Congress "intended to disrupt settled precedent by requiring that a criminal defendant pursue collateral relief before the time for seeking direct review expires and during a time period in which he or she may rightfully be considering the wisdom of further direct review." *Thomas,* 203 F.3d at 354. As the court noted in *Thomas,* "such a rule would be inconsistent with the well-settled principles of finality in the collateral review context." *Id.; see also Kapral,* 166 F.3d at 570 ("[C]ollateral attack is generally inappropriate if the possibility of further review remains open.").

In summary, I would hold that, for purposes of § 2255(1), if a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court after his direct appeal, the one-year period of limitation begins to run when the time for filing a petition for writ of certiorari expires. In this case, the one-year period of limitation began to run on August 17, 1997, ninety days after this court affirmed Torres' conviction and sentence. *See* Sup. Ct. R. 13.1. Torres alleges that he filed his § 2255 motion on August 16, 1998, one day before the period of limitation had run, by placing that motion in the prison's mail system. I would, therefore, vacate the district court's order and remand the case to the district court to determine if *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a prisoner's notice of appeal is considered filed when it is delivered to prison authorities for mailing), applies to § 2255 motions, and, if so, whether Torres satisfied its requirements.