Nathaniel John LITTLE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CIV. 4:01CV84.
No. 4:97CR41–01.

United States District Court, E.D. Virginia, Newport News Division.

Jan. 29, 2002.

Michael R. Smythers, Assistant United States Attorney, Norfolk, VA, for USA.

Nathaniel John Little # 50121–083, USP Terre Haute, Terre Haute, IN, pro se.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on petitioner Nathaniel John Little's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, petitioner's motion is **DENIED**.

### I. Factual and Procedural History

On June 30, 1997, a federal grand jury sitting in Newport News, Virginia, issued a multi-count indictment against petitioner Nathaniel John Little and four other co-defendants. Charles E. Haden was appointed as defense counsel for petitioner on July 29, 1997. Petitioner was arraigned on August 1, 1997, at which time he entered a plea of not guilty and requested a trial by jury. Richard C. Kerns was appointed as additional defense counsel on September 5, 1997. The joint trial of petitioner and one co-defendant commenced on October 16, 1997.

The evidence presented by the United States at trial was, in brief, as follows. Nathaniel John Little began directing a crack cocaine and marijuana distribution chain in January, 1996. The operation was based out of the Washington Burgess Inn in New Kent County, Virginia, and on 15th Street in the town of West Point, Virginia. According to the government's evidence,

Little resorted to violence throughout his tenure directing the drug distribution chain, including the attempted murder of a rival drug dealer and his wife in November, 1996, and a drive-by shooting in which he was the triggerman that same month. The government further presented that in January, 1997, Little shot to death one of his dealers, Cleveland "Petey" Christian.

On October 24, 1997, a jury convicted petitioner of twenty counts, including one count of conspiracy to distribute narcotics (21 U.S.C. § 846); one count of conducting a continuing criminal enterprise (CCE) (21 U.S.C. § 848); one count of the murder of Cleveland "Petey" Christian in furtherance of a CCE (21 U.S.C. § 848(e)(1)(a)); one count of distribution of heroin (21 U.S.C. § 841(a)(1) and 859(a)); three counts of distribution of crack cocaine (21 U.S.C. § 841(a)(1)); seven counts of possession of crack cocaine with the intent to distribute (21 U.S.C. § 841(a)(1)); one count of employment and use of person under eighteen years of age to distribute crack cocaine (21 U.S.C. § 861(a)(1)); one count of a drive-by shooting, wherein an individual, Raymone Jones, was shot through the neck with a .45 caliber bullet (18 U.S.C. § 36(a)(1)-(2), (b)(1)); two counts of using a firearm in relation to drug trafficking crime (21 U.S.C. § 924(c)(1)); and two counts of using and carrying a firearm in a crime of violence and during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1)).

On January 22, 1998, the court sentenced petitioner to a life term, plus 1020 months to be served concurrently, and 300 months to be served consecutively, which was the maximum end of the guideline range. The conspiracy count was vacated as a lesser included offense of the CCE, contingent on the CCE conviction not being overturned. Petitioner appealed his conviction to the Fourth Circuit Court of Appeals, and on March 23, 1999, the Fourth Circuit affirmed the conviction and sentence on all counts. *United States v. Little*, 1999 WL 156056 (4th Cir. Mar.23, 1999) (unpublished).

On July 28, 2001, petitioner filed a Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255.[1] On October 25, 2001, the government filed a response to petitioner's motion. On November 13, 2001, petitioner filed a reply to the government's response. The matter is now ripe for review.

## II. Discussion

### A. Timeliness of Petitioner's § 2255 Motion

The first issue for the court to determine is whether petitioner's claims are timely. Section 2255 was amended on April 24, 1996, by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, § 105, 110 Stat. 1214, 1220, which imposes a one-year statute of limitations on § 2255 motions. Section 2255, as amended by the AEDPA, now provides in relevant part:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was

---

1. Petitioner's § 2255 motion was received August 6, 2001, but the Certification of Service is dated July 28, 2001. Because the prisoner mailbox rule applies to a § 2255 motion, this court will accept July 28, 2001, as the effective date of filing. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir.1991); *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Petitioner does not attempt to show any impediment by the government that would have prevented him from filing his motion at an earlier date, and petitioner's claims are based on facts that would have been known to him at the conclusion of his sentencing. His second, third, and fourth claims do not involve any right newly-recognized by the Supreme Court. Therefore, for his second, third, and fourth claims, petitioner must rely on subsection (1), the date on which his conviction became final. For his first claim, petitioner must rely on either subsection (1), the date on which his conviction became final, or subsection (3), the date the Supreme Court initially recognized the right he asserts.

 All of petitioner's claims are untimely under subsection (1). The Fourth Circuit affirmed petitioner's conviction on March 23, 1999, and the mandate issued on April 14, 1999. Petitioner did not file a petition for certiorari with the Supreme Court, making the judgment of petitioner's conviction final on April 14, 1999. In general, "the conviction of a federal prisoner whose conviction is affirmed by [the Fourth Circuit] and who does not file a petition for certiorari becomes final on the

date that [the Fourth Circuit's] mandate issues in his direct appeal." *United States v. Torres*, 211 F.3d 836, 837 (4th Cir.2000). In *Torres*, the Fourth Circuit specifically held that a defendant's conviction becomes final when the Court of Appeals decides his claim, not at the expiration of the ninety-day period in which he could have filed a petition for certiorari. *Id.* at 839. The court reached this conclusion because "literally nothing else ... occurs following the issuance of the mandate by the appellate court." *Id.* Under the one-year statute of limitations, petitioner's opportunity to file a § 2255 motion expired on April 14, 2000, a full fifteen months before he filed this petition.

Petitioner admits his claims are untimely under § 2255(1), and asks this court to equitably toll the statute of limitations until July 28, 2000. He argues that "there are extraordinary extenuating circumstances and that he has exercised due diligence in attempting to fulfill the conditions of filing a § 2255 motion within the AEDPA guidelines." Pet. Mem. at 2. According to petitioner, he was not notified of the Fourth Circuit decision until a July 14, 2000, letter from the Fourth Circuit Clerk, and he was not notified that a writ of certiorari had not been filed in his case until a July 28, 2000, letter from the Supreme Court Clerk. Petitioner seeks equitable tolling of the statute of limitations until July 28, 2000, based on his assertion that his attorney was negligent in not notifying Little both that the Fourth Circuit had denied his appeal and that the attorney would not be filing a petition for certiorari.[2]

 Equitable tolling may excuse failure to comply with the strict requirements

2. Petitioner also argues that his difficulty acquiring a trial transcript and jury instructions prevented him from timely filing his § 2255 motion. Because a prisoner is not entitled to transcripts for the purpose of preparing a

§ 2255 motion, *see* 28 U.S.C. § 753(f), this court finds his argument on the difficulty of acquiring transcripts unavailing. *See United States v. Agubata,* 1998 WL 404303, at *3 (D.Md. July, 9, 1998) (stating "difficulty in

of a statute of limitations, but it cannot overcome a jurisdictional bar. *Harris v. Hutchinson,* 209 F.3d 325, 328 (4th Cir. 2000). However, the Fourth Circuit has held that the time restriction in § 2255 is a statute of limitations, which in the proper circumstances, may be subject to equitable tolling. *United States v. Prescott,* 221 F.3d 686, 688 (4th Cir.2000); *Harris,* 209 F.3d at 328–29. The doctrine of equitable tolling generally is appropriate in two distinct situations: where the plaintiff was prevented from asserting his claim by some wrongful conduct on the part of the defendant or where extraordinary circumstances beyond plaintiff's control made it impossible to file the claims on time. *Id.* at 330. As the *Harris* court stated, "any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Id.*

 Because there is no allegation in this case that the United States contributed to petitioner's delay in filing his petition, petitioner must point to some other extraordinary circumstance beyond his control that prevented him from complying with the statutory time limit. Petitioner's asserted delay in receiving information from his lawyer is insufficient to meet the high standard necessary for equitable tolling. *See Harris,* 209 F.3d at 330 ("[A]ny invocation of equity to relieve the strict

application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes."). In *Harris,* the court held that a lawyer's mistake in interpreting when the statute of limitations began running did not constitute an "extraordinary circumstance" that would justify equitable tolling. *Id.; see also Taliani v. Chrans,* 189 F.3d 597, 598 (7th Cir.1999) (holding lawyer's miscalculation of limitations period is not sufficient to justify equitable tolling); *Sandvik v. United States,* 177 F.3d 1269, 1272 (11th Cir. 1999) (holding lawyer's decision to mail petition by regular mail rather than by expedited delivery is not sufficient to justify equitable tolling). The Fourth Circuit has expressly stated that the extraordinary remedy of equitable tolling should be granted sparingly, reserved only for situations in which it is unconscionable to enforce the limitation period. *Prescott,* 221 F.3d at 688.

 Defendant indicated in his September 15, 1999, letter to the Fourth Circuit that he was seeking a copy of the appellate court opinion in his case, as well as the appeal record and copies of the appellate briefs. *See* Pet. Mot. Exhibit A–1. On September 20, 1999, the Fourth Circuit responded, advising him to contact his attorney for copies of the requested documents. Petitioner's documentation indicates that almost ten months passed before he next attempted to obtain the appellate court opinion.[3] On July 14, 2000,

---

obtaining the transcripts is not an 'extraordinary circumstance' that justifies tolling the period of limitation because a prisoner is not entitled to transcripts for the purpose of preparing a motion under 28 U.S.C. § 2255'').

**3.** Petitioner does not provide any documentation of correspondence that would support his claim that he made several written requests to his attorney for records. In his reply brief, petitioner argues he is entitled to

an evidentiary hearing to determine whether he exercised due diligence in attempting to obtain the requested information from his attorney. A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle him to relief. *United States v. Magini,* 973 F.2d 261, 264 (4th Cir.1992) (citing *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). However, even if the facts that petitioner alleges in his

the Fourth Circuit Clerk advised petitioner that the appellate court had affirmed the district court on March 23, 1999.

It is not unconscionable to enforce the statute of limitations against petitioner, when petitioner knew his case had been decided by the Fourth Circuit at the latest in September, 1999, and had no indication from his court-appointed attorney that the attorney would be filing a discretionary appeal to the Supreme Court. Furthermore, after petitioner received the July 14, 2000, letter confirming that the Fourth Circuit had affirmed his conviction, petitioner waited another year to file the current motion without at any point asking this court for an extension of time. Petitioner's circumstances do not constitute the "extraordinary circumstances" necessary to equitably toll the limitations period of 28 U.S.C. § 2255(1).

Petitioner's claim one, however, may be timely under subsection (3) of § 2255. The newly-recognized right that petitioner attempts to assert was decided by the Supreme Court in *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). However, the Supreme Court did not announce whether *Richardson* is retroactively applicable to cases on collateral review. Section 2255 states that the limitations period begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(3).

The courts of appeals are split on when the statute of limitations begins running in a situation where the Supreme Court has recognized a new right, but has not indicated whether it is applicable on collateral review. The Fourth Circuit, in dicta, indicated that the statute of limitations for claims under § 2255(3) does not begin to run until the Supreme Court rules on the collateral availability of the new right. *In re Vial*, 115 F.3d 1192, 1197 n. 9 (4th Cir.1997) (en banc).[4] In contrast, the Second Circuit and the Fifth Circuit have held that the limitations period in § 2255(3) is triggered when the Supreme Court initially acknowledges the right, rather than when the right is made retroactive on collateral review. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 222, 151 L.Ed.2d 158 (2001) (recognizing the circuit split and finding that the better interpretation is that the limitations period commences on the date the Supreme Court acknowledges the right); *Triestman v. United States*, 124 F.3d 361, 371 n. 13 (2d Cir.1997) (noting that "the statute provides that the limitations period begins to run on 'the date on which the right asserted was *initially* recognized by the Supreme Court,' 28 U.S.C. § 2255 (emphasis added), which may be different from the date on which the right is later made retroactively

---

motion and reply were true, the court does not find equitable tolling would be appropriate. In addition, even if equitable tolling were appropriate, petitioner's claims would fail on the merits. *See infra* at 12–16. Therefore, an evidentiary hearing is not necessary.

**4.** After *In re Vial*, the Fourth Circuit considered whether the new rule of law declared by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was applicable retroactively on collateral review, holding it was not. *See*

*United States v. Sanders*, 247 F.3d 139, 146–51 (4th Cir.2001). In so holding, the court in *Sanders* "assume[d], without deciding, that a circuit court can [also] declare a new rule retroactive on collateral review in an initial § 2255 petition." *Id.* at 146 n. 4. However, *Sanders* did not address whether the petitioner's claim was timely under the limitations period in § 2255(3). Rather, the court in *Sanders* "assum[ed], solely for purposes of this appeal," that the habeas petitioner's claims were not time-barred under § 2255(3), citing *In re Vial. Sanders*, 247 F.3d at 144.

available to cases on collateral review"). In *Lopez,* the Fifth Circuit expressly disagreed with *In re Vial* because under that interpretation of the statute of limitations, multiple situations could arise in which "the limitations period would never be triggered, and any petitioner's out-of-time motion would be timely, a likely unintended consequence by Congress." *Lopez,* 248 F.3d at 433.

Because neither the Supreme Court nor the Fourth Circuit has ruled on whether *Richardson* is retroactively applicable on collateral review, and because the Fourth Circuit has not revisited its statement in *In re Vial* of the necessity for a ruling on retroactivity to trigger the statute of limitations under § 2255(3), petitioner's *Richardson* claim may be timely.

## B. Merits of Petitioner's § 2255 Motion [5]

 In order to prevail under § 2255, a petitioner collaterally attacking his conviction or sentence must prove by a preponderance of the evidence that his sentence was imposed in violation of the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *Miller v. United States,* 261 F.2d 546, 547 (4th Cir.1958). In deciding a § 2255 motion, the court is not required to hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988); *United States v. Rowland,* 848 F.Supp. 639, 641 (E.D.Va. 1994). Moreover, petitioner requests and is accorded appropriate consideration as a *pro se* party. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding *pro se* complaints to less stringent standards than formal pleadings drafted by attorneys); *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).[6]

 Petitioner collaterally attacks his conviction and sentence, claiming the jury instructions for the CCE count under 21 U.S.C. § 848 were insufficient under *Rich-*

---

**5.** Little's second, third, and fourth claims would fail on the merits, even if they were not time-barred. Petitioner's second claim is based on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which the Fourth Circuit has definitively ruled is not retroactively applicable to cases on collateral review. *Sanders,* 247 F.3d 139. Petitioner's third claim alleges the § 924(c) counts amount to double jeopardy, but he did not present this claim at pretrial, at trial, or on direct appeal. He cannot assert it for the first time on collateral review because he has not shown plain error or a fundamental miscarriage of justice, *see United States v. Mikalajunas,* 186 F.3d 490, 493 (4th Cir.1999), nor has he demonstrated cause and prejudice for the default. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Petitioner's fourth claim is an attack on the indictment, but defenses and objections based on defects in the indictment must be raised prior to trial or they are waived absent cause for the waiver. *Fed. R.Crim.P.* 12(b)(2). Petitioner has not demonstrated cause for the failure to object, nor has he shown actual prejudice resulting from the defect. *See Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

**6.** Petitioner filed an application to proceed *in forma pauperis,* but this application is unnecessary given that there is no filing fee for a § 2255 motion. Petitioner also filed a motion for appointment of counsel for his § 2255 motion. The motion is denied because there is no right to counsel for this type of collateral review of a conviction, *see Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and petitioner has failed to show that the "interests of justice" require that he be appointed counsel. *See* 18 U.S.C. § 3006A(a)(2).

ardson, 526 U.S. at 813, 119 S.Ct. 1707. Even if petitioner's Richardson claim is timely, and Richardson retroactively applies on collateral review, any error in petitioner's case is harmless.[7] In addition, petitioner does not demonstrate cause and prejudice for his procedural default in not having raised this claim on direct appeal.

■ In Richardson, the Supreme Court held that in a CCE case, the jury must unanimously and separately agree on each of the violations that constitute a "continuing series of violations" required for the CCE conviction. 526 U.S. at 818–19, 119 S.Ct. 1707. Petitioner alleges that like most pre-Richardson cases, neither his indictment nor jury instructions required a finding of which offenses constituted the "continuing series of violations." The Fourth Circuit applies the harmless error test to Richardson mistakes. United States v. Brown, 202 F.3d 691, 699 (4th Cir.2000). Under the harmless error test, the court must determine whether the error was surely responsible for the guilty verdict. United States v. Hastings, 134 F.3d 235, 241 (4th Cir.1998) (holding that when "a district court erroneously instructs the jury on an element of the offense, the error may be disregarded as harmless if a reviewing court can determine, beyond a reasonable doubt, that a correctly instructed jury would have reached the same conclusion").

In petitioner's case, the alleged Richardson error occurred when the district court did not require the jury to specifically and separately agree on each of the three violations that comprised the "continuing series of violations" required for a CCE conviction. However, in addition to the CCE count, the jury also convicted petitioner of eighteen violations of the federal drug laws, any three of which are sufficient to establish the continuing series of violations under Richardson and § 848. Because the jury unanimously agreed on eighteen violations, it is beyond question that the jurors would have unanimously agreed on three predicate violations of the drug laws. The Fourth Circuit presaged a situation like petitioner's when it stated in Brown that there are certain situations in which a reviewing court can determine that the jury necessarily made the required findings, notwithstanding the omission. The court explained that an example of such a situation would be a case in which the jury that convicted a defendant on a CCE charge also convicted the defendant of at least three related drug violations. Brown, 202 F.3d at 700. Therefore, because petitioner was convicted of eighteen related drug violations, any error in petitioner's case was harmless. See United States v. Black, 2001 WL 1097761 (4th Cir. Sept.19, 2001) (unpublished); United States v. Plumlee, 2001 WL 876907 (4th Cir. Aug.3, 2001) (unpublished).

■ In addition, petitioner procedurally defaulted this claim by not objecting to the jury instruction at his trial, or in his appeal to the Fourth Circuit. As such, petitioner cannot succeed on this claim now unless he can show cause and prejudice or that a miscarriage of justice results. United States v. Frady, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir.1999). The timing of the Richardson decision is not cause for his procedural default, as the idea that a

---

7. The Supreme Court decided Richardson after petitioner's sentence had been affirmed by the Fourth Circuit, thereby making Richardson applicable to petitioner's motion only if Richardson is retroactive. However, in addressing petitioner's claim under Richardson, this court does not decide that Richardson is retroactively applicable on collateral review. Rather, the court finds that if Richardson is applicable, any Richardson violation is harmless error.

jury must unanimously agree on which drug violations constituted the continuing series of violations for purposes of a CCE conviction was neither novel nor unavailable to plaintiff at his trial or on appeal. *See United States v. Scott,* 218 F.3d 835, 839 (8th Cir.2000); *accord United States v. Dodson,* 225 F.3d 655, 2000 WL 1087212 (4th Cir. Aug.4, 2000) (unpublished) (noting that *Richardson* is unavailing in a § 2255 petition when a defendant did not raise the jury unanimity claim prior to collateral proceedings and did not establish cause and prejudice or actual innocence to excuse his procedural default). Petitioner has not demonstrated cause and prejudice or actual innocence, and the record contains overwhelming evidence of petitioner's guilt.

### III. Conclusion

For the reasons set forth in this Opinion, petitioner's motion under 28 U.S.C. § 2255 is **DISMISSED** and **DENIED.** All of petitioner's claims, except that under *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), are dismissed as time-barred under 28 U.S.C. § 2255(1), with no equitable tolling applicable to them. While the *Richardson* claim is also time-barred under § 2255(1), it may be timely under § 2255(3). However, because any *Richardson* violation was harmless error, that claim is also denied.

Petitioner is **ADVISED** that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 101 25th Street, Newport News, Virginia 23607. The written notice must be received by the Clerk within sixty (60) days from the date of this Opinion and Final Order.

The Clerk is **DIRECTED** to mail a copy of this Opinion and Final Order to petitioner and to the Assistant United States Attorney.

It is so **ORDERED.**