In re ESTATE of Ida Wray NISSEN, Deceased.

WACHOVIA BANK AND TRUST COM-PANY, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

No. 9481.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 28, 1964.

Decided April 23, 1965.

John M. Minor, Winston-Salem, N. C. (Deal, Hutchins & Minor, Winston-Salem, N. C., on brief), for petitioner.

Loring W. Post, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, on brief), for respondent.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge:

Taxpayer, Executor of the Estate of Ida Wray Nissen, seeks review of an adverse decision of the Tax Court. The only issue to be decided is whether, for federal income tax purposes, an estate is entitled to deduct the entire annual depreciation allowances on certain estate assets for the taxable years 1956, 1957 and 1958, or whether such depreciation deductions must be apportioned between the estate and certain named individuals who received discretionary distributions of estate income during those years. The Tax Court held that the deductions must be apportioned under Section 167 (g) of the Internal Revenue Code of 1954,[1] 26 U.S.C.A. § 167(g) (1958 Ed.). We disagree.

The facts, undisputed and mainly stipulated, are detailed in the Tax Court's opinion, 41 T.C. 522 (1964). The decedent, Ida Wray Nissen, died testate on October 25, 1954, a resident of North Carolina. After certain specific devises and bequests, the over-all plan of her will was as follows: All the residue and remainder of her estate she bequeathed and devised to Wachovia Bank and Trust Company as executor and trustee. Upon completion of the settlement of the estate, the executor was directed to convey the entire residue of the estate to itself as trustee and to divide the estate into two equal trusts, one for her son, George, and the other for her granddaughter, Rickie. The net income from George's trust was to be paid to him until death, with provision for his widow to take one-half of such income until her remarriage or death and thereupon the trust principal was to go to feed Rickie's trust. The granddaughter's trust provided for discretionary payments of net income, with remainder interests in her issue or, upon failure of issue, to a perpetual trust for the benefit of a designated charitable foundation. Neither George nor Rickie

---

[1]. Section 167(g) was redesignated 167(h) by Section 13(c) (1) of the Revenue Act of 1962, Pub.Law 87–834, approved October 16, 1962.

could ever become entitled to any of the corpus or principal of the respective trusts.

The will authorized the Bank, as executor, to pay or apply from the net income of the estate during the period of administration as much of the estate income as it, *in its sole discretion*, should deem requisite or desirable for the benefit of Rickie, with matching payments to George. Exercising this discretion the executor Bank, in the taxable years in question, distributed from the estate's income to Rickie $32,650 in 1956, $25,500 in 1957 and $34,500 in 1958. The same amounts were distributed to George.

Among the assets of the estate was all of the capital stock of Nissen Building, Incorporated. This corporation owned and operated a large eighteen story office and retail store building in downtown Winston-Salem, North Carolina. On June 30, 1955, the executor Bank, acting upon advice of counsel and pursuant to what it believed to be a requirement of the law of North Carolina, dissolved the corporation on the theory that the corporation could not continue to operate as such with ownership of all the stock lodged in a single shareholder, namely, the executor. See, Park Terrace, Inc. v. Phoenix Indemnity Co., 243 N.C. 595, 91 S.E.2d 584 (1956). All assets of the corporation, including the building and all of the equipment used in connection with its operation, were conveyed and transferred to the Bank as executor and trustee and payment of the corporation's indebtedness, including the unpaid balance of some $325,750 secured by mortgage, was assumed. Although payments were made on the mortgage, part of the debt remained unpaid during the years in question. In 1958 the executor Bank, after being duly authorized by the supervisory court, borrowed additional money, secured by a mortgage on the Nissen Building, to meet tenant demands for improvements. Under North Carolina law, these outstanding obligations prohibited the executor Bank from closing the estate.[2]

2. After the corporation was dissolved and during the period here involved, the business of the office building was conducted under the assumed name of "Nissen Building" by the executor. A certificate was filed pursuant to the North Carolina Assumed Name Statute on March 16, 1956. The Superior Court of Forsyth County authorized a change of the accounting date of the executor (and trustee) to correspond with that of the business. The funds of the Nissen Building were handled in the same manner as before the corporate dissolution. The business had its own bank account, its own manager and clerical force; it collected all monies; it maintained its own ledgers and records; it paid its own bills by checks signed by the manager. The executor made charges for special services rendered to the business by its Trust Department and they were paid by the manager. The funds of the business were kept separate and apart and were not commingled with any estate funds. Depreciation was handled in accord with the customary practice of taking depreciation in similar businesses. A depreciation reserve was carried in the main bank account of the business upon prior advice of counsel. During the tax years in question, the depreciation reserve totaled $124,020.29. From this account the business paid $60,750 on mortgage principal, $42,343.50 in capital improvements to the building and $20,000 was invested in a nearby central parking garage to provide needed customer parking. For the three years involved, only a little more than $900 of the depreciation reserve remained. These procedures were approved by the probate court having supervision of the administration of this estate.

Had it not been for the corporate dissolution, the questions herein presented would not have arisen. The stock of the corporation would have remained an asset of the estate, the corporation would have continued to operate as before and would have been entitled to the full depreciation deductions allowable; only the corporate net income would have become a part of the estate income available for distribution.

It was the duty of the executor to preserve the corpus of the estate during administration and it continued to operate the building and appurtenances so as to protect them as a part of the corpus to the fullest extent possible, with the approval of the duly constituted supervisory authority.

On the estate's federal income tax returns for 1956, 1957 and 1958, the executor Bank took as a deduction the entire annual depreciation allowance in connection with the operation of the Nissen Building. The Commissioner disallowed the deduction in the manner taken but apportioned it between the estate and the two discretionary distributees, George and Rickie, on the basis of estate income allocated to each. The Commissioner then assessed deficiencies for income taxes against the estate in the amount of $12,497.58 for 1956, $10,901.39 for 1957 and $11,531.51 for 1958.

The Tax Court held that the language in Section 167(g) of the 1954 Code pertaining to estates was applicable to the present situation and that the Commissioner's determination was correct. The executor contended that George and Rickie were not "heirs, legatees, and devisees" within the meaning of that statute and, consequently, the estate was entitled to the entire depreciation deduction. The Tax Court concluded, however, that Congress in using the words "heirs, legatees, and devisees" merely evidenced the intent to be all-inclusive and to cover even discretionary income distributees such as the son and granddaughter of the testatrix.

This record presents no question as to either the amount or the availability of the depreciation deduction. Determining the taxable entity entitled to such deduction is our only problem. Two sections of the Internal Revenue Code of 1954 are particularly applicable. They are set out below.[3]

We agree with the Tax Court that section 167(g) of the Code makes a distinction between estates and trusts. In the taxable years in question the estate remained open and administration could not be concluded because of the outstanding obligations. Consequently, the income received and the deductions allowed were subject to the provisions applicable to estates. These provisions are distinguishable from those applicable to trusts in that they do not provide for apportioning the allowable depreciation deduction in accordance with pertinent provisions of the governing instrument.

Under section 642(e) of the Code, the estate can only take the deduction for depreciation to the extent it is not apportioned to others by the provision in section 167(g). The latter section requires the deduction for depreciation to be apportioned between the estate and the *heirs, legatees* and *devisees* on the basis of estate income allocable to each.

Prior to enactment of the 1954 Code the estate, during administration, was the only taxable entity entitled to the depreciation deduction. MacMurray v. Commissioner, 16 T.C. 616, 622 (1951); 6 Mertens, Law of Federal Income Taxation, § 36.117. Although entitled to the benefit of the deduction, many times the estate had no taxable income because all "distributable income,"

3. "§ *642. Special rules for credits and deductions*

\* \* \* \* \*

"*(e) Deduction for depreciation and depletion.*—An estate or trust shall be allowed the deduction for depreciation and depletion only to the extent not allowable to beneficiaries under sections 167(g) and 611(b)."

"§ *167. Depreciation*

"*(a) General rule.*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear \* \* \*—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

\* \* \* \* \*

"*(g) Life tenants and beneficiaries of trusts and estates.*—\* \* \* In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each. In the case of an estate, the allowable deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate allocable to each."

whether actually distributed or not, was required to be deducted from gross income in computing the estate's taxable income. In cases where all the income was "distributable," the estate had no income from which the benefit of the deduction could be realized; the heirs, devisees, legatees or beneficiaries had income but no depreciation deduction. Consequently, the deduction was wholly lost. This created a recognized basic inequity which Congress obviously intended to correct in 1954 when it amended section 167(g) by adding the last sentence pertaining to estates. Local law specifies those who are heirs of an intestate. Local law and the will determine those who are legatees and devisees of a testator and the will speaks as of the date of the death of its maker. When status as an heir, devisee or legatee is fixed, vested rights attach and right to income follows and grows out of vested rights. It is obvious that Congress recognized that heirs, legatees and devisees do ultimately own and possess specific items of property and that such property, though producing income, may be constantly wasting and depreciating. Surely it logically follows that the ultimate owner should, during the period of estate administration, share in any allowable tax benefit which tends to reduce or offset a loss attributable to waste or depreciation of his own property. Thus, heirs, legatees and devisees were designated in the 1954 amendment of section 167(g) as those entitled to participate in the allowable depreciation deduction.

■■ The status of George and Rickie must be determined from the terms of the will and local law for there is no federal estate law applicable. As stated in Lyeth v. Hoey, 305 U.S. 188, at page 193, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938):

"* * * Undoubtedly the state law determines what persons are qualified to inherit property within the jurisdiction. * * * The local law determines the right to make a testamentary disposition of such property and the conditions essential

to the validity of wills, and the state courts settle their construction. * * * The State establishes the procedure governing the probate of wills and the processes of administration. Petioner's status as heir was thus determined by the law of Massachusetts. * * * "

This conclusion is supported by the rule that terminology of this kind when used in a federal statute is generally read and construed with reference to the law of the particular state.

■ In the common law sense, clearly George and Rickie are not "heirs"; heirs are persons who take property under the laws of intestate descent and distribution. Nor does it appear that they are "legatees" or "devisees" according to the generally accepted legal definition of those terms. Legatees are those who acquire ownership of personal property by will, and devisees are those who take real property by will. 96 C.J.S. Wills § 1097; Ferguson v. Ferguson, 225 N.C. 375, 35 S.E.2d 231 (1945). The son and granddaughter acquired no vested enforceable interest in the estate property, either real or personal, when the testatrix died. Neither of them had a vested right to any part of the corpus or income of the residuary estate during the period of administration. Rather, by explicit terms the residue or remainder of the decedent's property was bequeathed and devised to the executor Bank which was given absolute discretion to pay to or withhold from George and Rickie the income earned by the estate. The only enforceable right either could ever have by the terms of the will was the beneficial right to participate in the income for life from a trust created from the residuary estate after settlement. This right to income does not constitute a legacy. As stated in 96 C.J.S. Wills § 1125 at page 875. "* * * a 'legacy' does not include sums which are payable to the beneficiary of a trust fund created by the testator." The same authority states at page 818:

"* * * Where the residue of an estate is left in trust, without limitation as to time, the cestui who is to

receive the annual income, is not the 'residuary legatee.' * * *'' (96 C.J.S. Wills § 1097).

The Bank as executor and trustee was specifically designated as the residuary legatee and devisee. It had vested title to the assets comprising the residuary estate and it had vested rights to the income. The Commissioner's own regulations, in defining "beneficiary" in connection with the income taxation of estates, Treasury Regulations § 1.643(c)–1, provides:

> "An heir, legatee or devisee (including an *estate or trust*) is a beneficiary * * *."

Thus, the Commissioner clearly recognizes that an estate or trust may be a legatee or devisee.

The Tax Court concluded that Congress intended by the use of the terms "heirs, legatees, and devisees" to include all "beneficiaries" of an estate whether by will or intestate succession and whether entitled to realty or personalty. It cited no decisions of other courts and no persuasive legislative history to support this conclusion.

We cannot agree that Congress intended by the use of the terms, "heirs, legatees, and devisees," to include all persons who might possibly derive some pecuniary benefit from an estate. Just as Congress made a distinction between trusts and estates in determining *how* the depreciation deduction was to be apportioned, it made a similar distinction between the classes of persons *who* were to receive benefits from such apportioning.

If Congress had intended to include by the terms, "heirs, legatees, and devisees," every person who could possibly receive a pecuniary benefit from the estate, it could easily have so stated. Certainly it was aware of the distinction between a beneficiary and an "heir," "legatee" or "devisee." In section 643(c) of the 1954 Code, Congress provided that the term "beneficiary" includes "heirs, legatees, and devisees." Thus, Congress made certain, by so stating, that the term "beneficiary" was intended to include "heirs, legatees, and devisees." In enacting that part of section 167(g) applicable to estates, Congress said nothing to indicate an intent to include persons who receive discretionary payments of income from an estate but who do not fall within a specified class, and there is no legislative history from which an inference of such intent can be drawn.

As the Supreme Court stated in Hanover Bank v. Commissioner, 369 U.S. 672, at page 687, 82 S.Ct. 1080, 1089, 8 L.Ed.2d 187 (1962):

> "A firmly established principle of statutory interpretation is that 'the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.' * * *"

See also, 1 Mertens, Law of Federal Income Taxation, § 3.14. Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. United States v. Merriam, 263 U.S. 179, 187, 44 S.Ct. 69, 68 L.Ed. 240 (1923); 1 Mertens, Law of Federal Income Taxation, § 3.15. In legal terminology and in ordinary, everyday acceptation, the words "heirs, legatees, and devisees" do not include discretionary distributees of estate income.

The Commissioner argues that the statute with which we are concerned must be strictly construed against the taxpayer as deductions are a matter of legislative grace. This rule is applicable if there be some ambiguity in the statute. 1 Mertens, Law of Federal Income Taxation, §§ 3.02 and 3.08. The language used in section 167(g) is unambiguous. It makes a clear distinction between estates and trusts for determining how the deduction for depreciation is to be apportioned and it precisely sets forth the classes of persons to whom the deduction is to be allocated. It is only when one undertakes to indulge in a presumption that Congress intended to include all persons who receive a pecuniary benefit from the estate by using the terms "heirs,

legatees, and devisees" that any ambiguity is created.

Discretionary payments of income from the residuary estate cannot convert recipients, George and Rickie, into "heirs, legatees, and devisees." Consequently, no part of the deduction for depreciation could properly be apportioned to them, and under section 642(e) the estate was entitled to take the entire allowable deduction for the years in question.

Reversed and remanded.