**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Douglas J. DODSON, Jr., a/k/a Becky,**
**Defendant–Appellant.**

**No. 01–6480.**

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 2002.

Decided May 22, 2002.

**ARGUED:** Kendal Aylor Sibley, Student, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Defendant–Appellant. John Thomas Lynch, Jr., Special Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Plaintiff–Appellee. **ON BRIEF:** Neal L. Walters, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Defendant–Appellant. Paul J. McNulty, United States Attorney, Office of the United States Attorney, Alexandria, Virginia; Nicholas Stephan Altimari, Assistant United States Attorney, Office of the United States Attorney, Richmond, Virginia, for Plaintiff–Appellee.

Before MOTZ, Circuit Judge, WALTER K. STAPLETON, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation, and W. CRAIG BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge DIANE GRIBBON

MOTZ wrote the opinion, in which Senior Judge STAPLETON and Judge BROADWATER joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge.

The district court dismissed Douglas J. Dodson, Jr.'s initial motion for relief under 28 U.S.C.A. § 2255 (West Supp.2001) as untimely. We vacate and remand for further proceedings.

### I.

A jury convicted Dodson of five counts of a multicount indictment alleging federal drug and firearms crimes, and on March 5, 1996, the district court imposed sentence.

On count one, conspiracy to distribute heroin and cocaine in violation of 21 U.S.C.A. § 846 (West 1999), the court sentenced Dodson to life imprisonment. On each of counts two and four, possession with intent to distribute a controlled substance in violation of 21 U.S.C.A. § 841(a)(1) (West 1999), Dodson received a sentence of 240 months imprisonment, to run concurrently with the life sentence on count one. On count seven, possession of a firearm by a convicted felon in violation of 18 U.S.C.A. § 922(g)(1) (West 2000), the court sentenced Dodson to 120 months imprisonment, also to run concurrently with the sentence on count one. Finally, on count five, use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) (West 2000), the court imposed a sentence of sixty months, to run consecutively. In total, then, Dodson received a sentence of life imprisonment plus sixty months.

Dodson filed a timely appeal. On direct appeal, we upheld Dodson's conviction and sentence on count one. See United States v. Bull, No. 96–4234, 1998 WL 279561 (4th Cir. May 20, 1998). However, we vacated his conviction and sentence on count five, finding insufficient evidence to support the conviction. Id. at *3. Although we affirmed Dodson's convictions on counts two, four, and seven, we vacated his sentences on those counts and remanded for resentencing so that the district court could, if it wished, take into account our vacatur of the conviction and sentence on count five when reimposing sentence on counts two, four, and seven. Id. at *4. Our mandate issued on June 11, 1998.

Pursuant to that mandate, the district court held a resentencing hearing and on September 21, 1998, reimposed the same sentences on each of counts two, four, and seven. On direct appeal from this ruling, we considered and rejected several challenges to Dodson's sentences on the three remanded counts. See United States v. Dodson, No. 98–4740, 1999 WL 781616 (4th Cir. Oct.1, 1999). We refused to consider challenges to Dodson's conviction and sentence on count one, however, reasoning that these challenges were beyond the scope of our June 11, 1998 mandate and, therefore, not before the district court at resentencing. Id. at 1. On October 25, 1999, we issued a mandate affirming the district court's remand ruling. Dodson did not petition for a writ of certiorari.

Eleven months later, in September 2000, Dodson filed a motion under 28 U.S.C.A. § 2255, raising nine claims relating to all counts (counts one, two, four, and seven) of conviction. Shortly thereafter, Dodson filed a motion for leave to amend, seeking to add an additional claim with respect to count one.

### II.

The district court dismissed Dodson's § 2255 motion as untimely. The court first noted that although prior to enactment of the Antiterrorism and Effective

Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA), "a federal prisoner could collaterally attack his conviction pursuant to a § 2255 motion 'at any time,' " the AEDPA requires a prisoner to file such a motion not more than one year from " 'the date on which the judgment becomes final.' " *Dodson v. United States*, No. 3:95CR73–1, slip op. at 2–3 (E.D.Va. Jan. 29, 2001); *cf.* 28 U.S.C.A. § 2255. The court then explained that " 'for purposes of § 2255, the conviction of a federal prisoner whose conviction is affirmed ... and who does not file a petition for certiorari becomes final on the date that [the] mandate issues in his direct appeal.' " *Id.* at 3 (quoting *United States v. Torres*, 211 F.3d 836, 837 (4th Cir.2000)).

The district court next determined that our ruling in Dodson's first direct appeal rendered final Dodson's "conviction and life sentence in count one" and also his "convictions under counts two, four, and seven." *Id.* At that time, the court believed Dodson "ceased to be able to pursue a direct appeal on all of those issues," so "the limitations clock began to run" on them. *Id.* "The only remaining issues," on which the statute did not then begin to run, according to the district court, "were the sentences pertaining to the remanded counts." *Id.* Upon review of Dodson's § 2255 petition, the court held that "all issues" raised therein were "disposed of" in the first appeal, and, therefore, that the motion was "not timely filed." *Id.*

Dodson appeals, contending that the statute of limitations did not begin to run on any of the claims raised in his § 2255 motion until "his resentencing was affirmed by the Fourth Circuit on October 25, 1999." Brief of Appellant at 10. Because Dodson filed his motion in September 2000, less than one year after that date, he contends that his § 2255 motion was timely.

Although in the district court the Government argued to the contrary, it now agrees with Dodson that the motion was timely. Brief of Appellee at 8. Accordingly, the Government joins Dodson in asking us to remand the case to the district court so that the court can consider Dodson's § 2255 motion on the merits.

## III.

■ The district court correctly recognized that the AEDPA establishes a one-year limitations period, which governs this case. Dodson was therefore required to file his § 2255 motion not more than one year from "the date on which the judgment of conviction becomes final." 28 U.S.C.A. § 2255 ¶ 6(1). The district court also understood that under our circuit precedent, if "a federal prisoner does not petition for certiorari in the Supreme Court," as Dodson did not, "his judgment of conviction becomes final under § 2255 ¶ 6(1) upon the issuance by a court of appeals of the mandate contemplated by Rule 41 of the Federal Rules of Appellate Procedure." *United States v. Segers*, 271 F.3d 181, 184 (4th Cir.2001) (citing *Torres*, 211 F.3d at 836).

■ The district court faltered, however, in determining the meaning of "judgment of conviction" for purposes of § 2255. Although Congress did not expressly define "judgment of conviction" in the AEDPA, the phrase "judgment of conviction" had a well established meaning in federal law, of which Congress was surely aware when it drafted the AEDPA. Courts presume, in interpreting statutes, that " '[t]he law uses familiar legal expressions in their familiar legal sense.' " *Bradley v. United States*, 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (quoting *Henry v. United States*, 251 U.S. 393, 40 S.Ct. 185, 64 L.Ed. 322 (1920)); *see also McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342,

111 S.Ct. 807, 112 L.Ed.2d 866 (1991); *Wachovia Bank & Trust Co. v. C.I.R. (In re Nissen's Estate)*, 345 F.2d 230, 235 (4th Cir.1965) ("Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense." (citing *United States v. Merriam*, 263 U.S. 179, 187, 44 S.Ct. 69, 68 L.Ed. 240 (1923))). The well established meaning of "judgment of conviction" forecloses the district court's interpretation of the statute in two ways, as the Government now forthrightly acknowledges.

First, by the time of the enactment of the AEDPA in 1996, it was well recognized that a criminal "judgment" includes both a conviction and its associated sentence, so that a "judgment of conviction" cannot be final with respect to a given count until both the conviction and sentence associated with the count are final. This meaning is both longstanding and continuous in the law. More than fifty years before passage of the AEDPA, the Supreme Court explained that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937) (citations omitted). Since then, the Court itself has recognized that it has "often stated" that a "criminal judgment necessarily includes the sentence imposed upon the defendant." *Teague v. Lane*, 489 U.S. 288, 314 n. 2, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Indeed, almost contemporaneous with the enactment of the AEDPA, the Court in construing a sentencing provision in 18 U.S.C.A. § 924(c)(1) flatly stated that "[a] judgment of conviction includes both the adjudication of guilt and the sentence."

*Deal v. United States*, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993).

█ Moreover, only a single "judgment of conviction" arises from a case, like this one, in which a defendant is convicted at one trial on multiple counts of an indictment. This follows from longstanding practice under the Federal Rules of Criminal Procedure. Since 1944, the Rules have defined "[a] judgment of conviction" as the integrated document filed by the court at the close of a criminal trial, containing "the plea, the verdict or findings, the adjudication, and the sentence" and further have provided that "*[t]he* judgment must be signed by the judge and entered by the clerk." *See* Fed.R.Crim.P. 32(d)(1) (2002) (emphasis added); *cf.* Fed.R.Crim.P. 32(b)(1) (adopted 1944, amended 1994) (stating that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence" and that "*[t]he* judgment shall be signed by the judge and entered by the clerk" (emphasis added)). Pursuant to this rule, the district court in Dodson's case noted the various counts for which he was indicted, and the adjudication and sentence with respect to each, in a single "judgment." *See* Record at 238, *United States v. Dodson*, No. CR–95–73 (E.D.Va. Mar. 5, 1996).

The verbatim text of this rule supplied the definition of "judgment of conviction" in the 1990 edition of *Black's Law Dictionary, see Black's Law Dictionary* 843 (6th ed.1990), the version available for legislative consultation when Congress drafted the AEDPA.[1] In keeping with this rule, the Supreme Court and this Court have frequently referred to multiple convictions

---

1. We note that Black's recently condensed its definition of "judgment of conviction," making the point even clearer. *See Black's Law Dictionary* 847 (7th ed.1999) (defining "judgment of conviction" as "[t]he written record of a criminal judgment, consisting of the plea, the verdict or findings, the adjudication, and the sentence," and citing Fed.R.Crim.P. 32(d)(1)).

and sentences arising from a single indictment as *"the* judgment of conviction." *See, e.g., United States v. X–Citement Video, Inc.,* 513 U.S. 64, 67, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (describing convictions and sentences on three crimes); *United States v. Miller,* 471 U.S. 130, 131, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (describing convictions and sentences on two crimes); *Goldberg v. United States,* 425 U.S. 94, 99, 112, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (describing "multiple" mail fraud convictions and sentences); *United States v. Vinyard,* 266 F.3d 320, 324, 328 n. 6 (4th Cir.2001) (describing convictions and sentences on 26 crimes); *United States v. Richardson,* 233 F.3d 223, 225, 230 (4th Cir.2000) (describing "various convictions" and sentences); *United States v. Custis,* 988 F.2d 1355, 1357, 1358 (4th Cir.1993) (describing convictions and sentences on two crimes); *United States v. Coates,* 949 F.2d 104, 105, 106 (4th Cir.1991) (same). *See also United States v. Monsanto,* 491 U.S. 600, 602, 605 n. 4, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (referring to convictions and sentences under "multi-count indictment" as *"a* judgment of conviction" (emphasis added)). In Dodson's case, pursuant to this rule, the district court noted the various counts, and the adjudication and sentence with respect to each, on a single judgment.

In cases decided before enactment of the Sentencing Guidelines or use of other modern sentencing procedures, in which courts had to determine the legality of sentences entered on several counts of conviction, courts apparently found it so clear that such sentences were entered in a single judgment of conviction as to require little explanation. *See, e.g., Donegan v. Snook,* 6 F.2d 640, 641 (N.D.Ga.1925) ("[W]hen the judgment is on several counts in one indictment, or on several indictments consolidated into one case, there is but one record and one judgment."); *see also*

*McHugh v. United States,* 230 F.2d 252, 255 (1st Cir.1956) (ruling that defendant's two distinct convictions under same indictment constitute a single consolidated judgment); *Ross v. Hudspeth,* 108 F.2d 628, 628–29 (10th Cir.1939) (treating convictions and sentences on one multicount indictment as a single judgment).

More recently the Supreme Court depended on the definition of "judgment of conviction" in Rule 32 to reach its holding in *Deal,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44. There a jury convicted the defendant of six counts of using or carrying a gun in connection with a crime of violence, his first convictions for this offense. *Id.* at 130. At sentencing, the district court had to apply the following statutory language:

[w]hoever, during and in relation to any crime of violence … uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence …, be sentenced to imprisonment for five years…. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years….

18 U.S.C.A. § 924(c)(1). The district court imposed a sentence of five years on the first count, held that the remaining counts were "second or subsequent conviction[s]," and imposed a sentence of twenty years on those counts. *Deal,* 508 U.S. at 130, 113 S.Ct. 1993.

On appeal, Deal challenged his sentence, asserting that key terms in § 924(c) were ambiguous and could be understood to mean that counts two through six were not "second or subsequent." Specifically, Deal argued that the term "conviction" could refer either to (1) a single finding of guilt; or (2) "the entry of a final judgment." *Id.* at 131, 113 S.Ct. 1993. If the first definition were adopted, "second or subsequent

conviction" would refer to any "additional finding of guilt rendered at any time," in which case, counts two through six would be "second or subsequent," as the district court held. *Id.* Alternatively, if the second definition were adopted, a conviction would be "second or subsequent" only if it were part of "a judgment of conviction entered at a later time," in which case, counts two through six would *not* be second or subsequent because "the District Court entered *only a single judgment on all of the counts,*" and Deal had never before been convicted for a violation of § 924(c). *Id.* (emphasis added).

In affirming Deal's sentence, the Supreme Court clearly relied on its view that a single "judgment of conviction" could (and in Deal's case did) include the sentence and conviction on each of several counts of an indictment. First, the Court held that the word "conviction" in § 924(c) did not by itself mean "judgment of conviction." It reasoned that "[a] judgment of conviction includes both the adjudication of guilt and the sentence," and if this definition were inserted into § 924(c) the provision would be rendered "incoherent": § 924(c) would then direct a court to adjust a defendant's sentence upward from five to twenty years only *after* entering its final judgment—which judgment would include the sentence the court was supposed to adjust. *Id.* at 132, 113 S.Ct. 1993. Having disposed of this argument, the Court saw no need to reach a related argument that the terms "second" and "subsequent" were also ambiguous (assertedly, they could mean either "next in time" or "next in order or succession"). The Court explained that any "ambiguity" in these terms

> is worth pursuing if "conviction" means "judgment," since *a judgment entered once-in-time can (as here) include multiple counts.* The point becomes irrelevant, however, when "conviction" means

(as we hold) a finding of guilt. *Unlike a judgment on several counts, findings of guilt on several counts are necessarily arrived at successively in time.*

*Id.* at 133 n. 1, 113 S.Ct. 1993 (emphasis added).

■ The Court's discussion in *Deal* confirms our view that when, as here, convictions and sentences arise from a multi-count indictment, a single judgment of conviction results. Thus, there is a strong presumption that Congress generally intended that convictions and sentences on all counts become *a* final judgment of conviction for purposes of § 2255 ¶ 6(1) at the same time, in this case on October 25, 1999. *See Bradley,* 410 U.S. at 609, 93 S.Ct. 1151 (1973) ("[T]he law uses familiar legal expressions in their familiar legal sense." (quotation marks and citation omitted)).

We see nothing in the text or structure of the AEDPA to indicate that Congress intended a different meaning in a case like Dodson's. Indeed, a holding that disaggregated "judgments of conviction" for § 2255 purposes, so that individual counts or issues became final at different times, would give prisoners strong incentive to bring parallel proceedings, wasting judicial resources and generating needlessly complex issues for litigation. On pain of losing the right to bring a habeas appeal, a prisoner would be required to bring each collateral challenge as it became available, even though related counts or issues were proceeding simultaneously in the trial court or on direct review.

For example, a prisoner whose conviction is upheld, but whose case was remanded for resentencing, would need to challenge his conviction while the district court considered his sentence. Later, after direct review of the remanded counts concluded, a new period for filing a § 2255

motion on those counts would begin, and the prisoner would likely file a new motion raising factually similar claims. If the prisoner alleged ineffective assistance of counsel or the suppression of *Brady* materials—claims that often arise for the first time in collateral proceedings—multiple rounds of habeas review would frequently require multiple filings from prosecutors and defense counsel.

Reviewing courts would be forced not only to revisit the same set of (frequently complex) facts, but also to determine whether issues in new petitions were "successive," or otherwise procedurally barred because they were not brought at an earlier opportunity. To be sure, carefully drafted motions would not necessarily be "successive"; a petitioner could limit his claims so that they concerned only issues within the scope of a remand. But we hesitate to predict that most pro se filings would be so carefully drafted, and find it more likely that courts would be required to comb through § 2255 motions to determine whether claims were truly barred, with a careful eye on prisoners' due process rights. *See In re Taylor,* 171 F.3d 185, 188 n. * (4th Cir.1999). We avoid these difficulties by applying the established meaning of "judgment of conviction," and holding that such a judgment may not be disaggregated for purposes of finality under § 2255.

■ Because Dodson's case involves a remand, we think it worth noting that finality is not delayed if an appellate court disposes of all counts in a judgment of conviction but remands for a ministerial

purpose that could not result in a valid second appeal. *See United States v. Wilson,* 256 F.3d 217 (4th Cir.2001) (holding statutory period not tolled by remand for vacatur of a conviction on one count, after all other counts in judgment of conviction were affirmed); *contra United States v. Colvin,* 204 F.3d 1221, 1222–25 (9th Cir. 2000) (holding to the contrary despite recognition that district court's conclusion on remand that it "had no authority under the mandate to rethink the sentence" may "have been correct"). In such cases, when the court of appeals enters its mandate (or the Supreme Court concludes its review of a petition of certiorari), there is no reason to delay habeas review; a defendant has no grounds for further, nonfrivolous direct appeal, and the judgment of conviction is therefore final as to all counts. *See Wilson,* 256 F.3d at 220.[2] *See also Richardson v. Gramley,* 998 F.2d 463, 465 (7th Cir.1993) ("A judgment is not final if the appellate court has remanded the case to the lower court for further proceedings, *unless* the remand is for a purely 'ministerial' purpose, involving no discretion, such as recomputing prejudgment interest according to a set formula." (emphasis added)).

In this case, of course, the remand was not merely ministerial. Rather, our remand required the district court to hold a sentencing hearing and to exercise its discretion in reimposing sentence. Such a remand clearly may supply a defendant with the basis for a nonfrivolous appeal. In such cases, the one-year statute of limitations in § 2255 does not begin to run

**2.** The Government argues, and we agree, that *Wilson's* holding should not be stretched to establish a rule that in every case conviction under each count of an indictment constitutes a separate judgment of conviction. Such a rule would conflict with *Deal,* and would, as the United States argued in successfully opposing a grant of certiorari in *Wilson,* "be

questionable in a case [like the one at hand] in which one or more counts in a multi-count conviction were remanded for further discretionary proceedings." Brief for the United States in Opposition at 11, *Wilson v. United States,* —— U.S. ——, 122 S.Ct. 823, 151 L.Ed.2d 705 (2002) (No. 01–6549).

until there is a final judgment of conviction as to all counts in the judgment of conviction. Each count has the same date of finality, and, as to each count, conviction and sentence are final on the same date.

Accordingly, because Dodson did not seek certiorari,[3] his judgment of conviction became final for § 2255 purposes on the date that we issued our mandate in the resentencing appeal, October 25, 1999. Since Dodson filed his initial § 2255 petition in September 2000, less than one year after our mandate issued, his petition is timely and should have been considered on the merits.

### IV.

For these reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*

---

**3.** We note that contrary to the suggestion of the district court, after we issued our second mandate on October 25, 1999, Dodson could have petitioned the Supreme Court for certiorari as to every issue—including his challenges to count one. *See Mercer v. Theriot,* 377 U.S. 152, 153–54, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964) (per curiam) (noting that it is "settled" that the Supreme Court may review issues settled in prior decisions of a court of appeals after granting certiorari as to a subsequent decision).