UNITED STATES of America,
Appellee,

v.

Steven CAMACHO, also known as Spank, also known as Spanko, Antonio Feliciano, also known as Tony, also known as Guess, Jaime Rodriguez, also known as Jay, Defendants–Appellants,

Jose Antonio Hernandez, also known as Tony, Mayra Aponte, Defendants.

No. 02–1194.

United States Court of Appeals, Second Circuit.

Argued: March 22, 2004.

Decided: May 25, 2004.

Steven D. Feldman, Assistant United States Attorney (Meir Feder and Adam B. Siegel, Assistant United States Attorneys, of counsel), for David N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Marshall A. Mintz, for Defendants–Appellants.

Joshua L. Dratel, Joshual L. Dratel, P.C., New York, NY, for Defendant–Appellant Steven Camacho.

Joyce C. London, New York, NY, for Defendant–Appellant Jaime Rodriguez.

Gail Jacobs, Great Neck, NY, for Defendant–Appellant Antonio Feliciano.

Before: MCLAUGHLIN, KATZMANN, and WESLEY, Circuit Judges.

KATZMANN, Circuit Judge.

Defendants-appellants Steven Camacho, Jamie Rodriguez, and Antonio Feliciano (collectively, the "defendants") appeal from a decision of the United States District Court for the Southern District of New York (Keenan, *J.*), holding that it lacked jurisdiction to grant the defendants' motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 because the motion was untimely under both the current and the former versions of the Rule. For the reasons that follow, we affirm.

## BACKGROUND

On July 27, 1994, after a two-week trial, the defendants were convicted of conspiring to distribute and possess with intent to distribute heroin, distributing and possessing with intent to distribute heroin, using and carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm with an obliterated serial number. In addition, the jury found Camacho and Rodriguez guilty of conspiring to suborn perjury and conspiring to obstruct justice by preventing the testimony of a witness through threats and intimidation. On November 10, 1994, the district court sentenced Camacho and Rodriguez to 300 months' imprisonment, five years of supervised release, a $10,000 fine, and an assessment of $50 per count of conviction; on December 14, 1994, it sentenced Feliciano to 123 months' imprisonment, five years of supervised release, and a $200 special assessment.

The defendants appealed. On appeal, we vacated the defendants' convictions for using and carrying a firearm during and in relation to a drug trafficking crime in light of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), affirmed the remainder of the convictions, and remanded for re-sentencing on the remaining counts. *See United States v. Hernandez,* 85 F.3d 1023, 1032 (2d Cir.1996). Our mandate issued on July 2, 1996.

On remand, the district court enhanced all of the defendants' sentences pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a dangerous weapon in connection with a drug offense. This enhancement increased Camacho's and Rodriguez's sentences on the drug trafficking counts to 300 months' imprisonment and Feliciano's sentence on the drug trafficking counts to 97 months' imprisonment. The sentences on the other counts remained the same. The defendants appealed, and we affirmed the district court's amended judgment by summary order. *See United States v. Hernandez,* 122 F.3d 1058 (2d Cir.1997). This mandate issued on July 30, 1997.

On July 8, 1999, approximately five years after the jury returned its verdict, the defendants moved for a new trial under Federal Rule of Criminal Procedure 33 on the ground of newly discovered evidence. The version of Rule 33 in effect at the time the defendants filed their motion (the "current Rule") provided, "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed.R.Crim.P. 33. Acknowledging that their motion was untimely under this version of the Rule, the defendants argued that the timeliness of their motion was governed instead by the former version of the Rule in effect at the time of the subject crimes and all prior court proceedings (the "former Rule" or "former version"). Under that version, a motion for a new trial based on newly discovered evidence was timely as long as it was filed "before or within two years after final judgment." Fed.R.Crim.P. 33 (amended 1998).

The district court found it unnecessary to decide which version of Rule 33 controlled, holding that the motion was untimely under each. Specifically, the district court explained that under the former Rule, the judgment would have become final, and the two-year limitations period would thus have begun to run, upon the issuance of the court of appeals' mandate of July 2, 1996, which affirmed the district court's judgment in part, vacated it in part, and remanded for resentencing. Accordingly, the district court denied the defendants' Rule 33 motion for a new trial. *See United States v. Camacho,* 93–CR–549(JFK), 2001 WL 946354, 2001 U.S. Dist. LEXIS 12500 (S.D.N.Y. Aug. 21, 2001).

This appeal followed.

## DISCUSSION

The primary issue on appeal is whether the district court erred in holding that "final judgment" under former Rule 33 entered upon the issuance of our first, as opposed to our second, mandate. We review this question, as one of law, *de novo. See United States v. Monus,* 356 F.3d 714, 716 (6th Cir.2004); *see also United States v. Pardue,* 363 F.3d 695, 697 (8th Cir. 2004); *United States v. Burke,* 345 F.3d 416, 421 (6th Cir.2003); *United States v. Roman–Zarate,* 115 F.3d 778, 781 (10th Cir.1997).

We have previously interpreted the meaning of "final judgment" as used in the former Rule. In *Romero v. United States,* 28 F.3d 267 (2d Cir.1994) (per curiam), we held that "when an appeal is taken from a criminal conviction," the two-year period runs not from the "date of the entry of the judgment of conviction" in the district court, but from "the date of the issuance of the mandate of affirmance by the appellate court." *Id.* at 268. We then expressly declared in *United States v. Reyes,* 49 F.3d 63 (2d Cir.1995), as we had suggested in *Romero,* that the relevant date is the issuance date, not of the appellate court's judgment, but rather of its mandate. *Id.* at 68. Finally, in *United States v. Lussier,* 219 F.3d 217 (2d Cir.2000), we "join[ed] our sister circuits in holding that, in the absence of a stay of the mandate, the Supreme Court's action on a petition for certiorari has no bearing on the timeliness of a Rule 33 motion for a new trial based on newly discovered evidence." *Id.* at 219.

The defendants argue that final judgment could not have entered prior to the issuance of our second mandate, affirming the district court's resentencing of the defendants, because the Supreme Court has made clear that a judgment of conviction includes both the adjudication of guilt and the sentence. Specifically, the Supreme Court in *Deal v. United States,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), set forth this two-pronged definition of the term "conviction" in the context of 18 U.S.C. § 924(c)(1), which provides for a longer term of imprisonment "[i]n the case of [a criminal defendant's] second or subsequent conviction under [the] subsection." *Id.* at 132, 113 S.Ct. 1993. A plurality of the Court offered a similar description of a criminal judgment in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), to support its conclusion that the retroactivity approach (to determine when a decision announcing a new rule should be given retroactive effect) to be applied to habeas corpus petitions challenging convictions should apply as well to collateral attacks on criminal sentences. *Id.* at 314 n. 2, 109 S.Ct. 1060. In addition, the Court interpreted the term judgment to include the district court's sentence in *Flynt v. Ohio* 451 U.S. 619, 620, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) and *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937), with respect to the final

judgment rule, allowing for appellate review of final criminal judgments.

In support of their position, the defendants also rely on the Fourth Circuit's holding in *United States v. Dodson*, 291 F.3d 268 (4th Cir.2002). The defendant in *Dodson* was convicted of five counts of a multicount indictment and sentenced to a term of life imprisonment. Following a direct appeal, the Fourth Circuit, by mandate issued on June 11, 1998, upheld Dodson's conviction and sentence on one count, vacated his conviction and sentence on another count, and affirmed Dodson's convictions on the remaining counts but vacated his sentences on those counts and remanded for resentencing. *Id.* at 270. After resentencing, the Fourth Circuit issued a mandate on October 25, 1999, affirming the district court's amended sentence. *Id.* Eleven months later, in September 2000, Dodson filed a motion under 28 U.S.C. § 2255, attacking his conviction. *Id.* Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this motion had to be filed not more than one year from "the date on which the judgment of conviction bec[ame] final." 28 U.S.C. § 2255. Generally, in the Fourth Circuit, where a federal prisoner does not petition for certiorari in the Supreme Court, as Dodson did not, his judgment of conviction becomes final under § 2255 upon the issuance of the court of appeals' mandate. *Dodson*, 291 F.3d at 271. The Fourth Circuit was thus presented with the question, almost identical to the one at issue here but in the context of 28 U.S.C. § 2255, of whether the defendant's conviction became final upon the issuance of the first or of the second mandate. The court chose the later date, explaining:

> [B]y the time of the enactment of the AEDPA in 1996, it was well recognized that a criminal "judgment" includes both a conviction and its associated sentence, so that a "judgment of conviction" can-

not be final with respect to a given count until both the conviction and sentence associated with the count are final. This meaning is both longstanding and continuous in the law.

*Id.* at 272.

Considering the weight of other case law, we, however, are not convinced by the defendants' argument. The Supreme Court has explicitly recognized that "[f]inality is variously defined," and that "like many legal terms, its precise meaning depends on context." *Clay v. United States*, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Thus, for example, although a criminal judgment becomes final for purposes of appellate review after the district court sentences the defendant and "disassociates itself from the case," *Clay*, 537 U.S. at 527, 123 S.Ct. 1072; *see also* 28 U.S.C. § 2191, the judgment certainly is not yet final, prior to at least some sort of appellate review, for other purposes, such as, for measuring the permissible time to file a petition for habeas corpus or a motion for a new trial. And although in the habeas context, finality does not attach until the Supreme Court either "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or [until] the time for filing a certiorari petition expires," *Clay*, 537 U.S. at 527, 123 S.Ct. 1072, "the Supreme Court's action on a petition for certiorari has no bearing on the timeliness of a Rule 33 motion," *Lussier*, 219 F.3d at 219. *Dodson*'s explication of the meaning of finality in the context of 18 U.S.C. § 2255 therefore says little about the meaning of the term in the context of the former version of Rule 33. Nor are the Supreme Court's frequent pronouncements that a criminal judgment includes the sentence imposed by the district court dispositive. While there is no dispute that a "criminal judgment" or "judgment of con-

viction" cannot issue against a defendant before he or she has been sentenced, that fact does not determine when the judgment becomes final under the former version of Rule 33.

There are, on the other hand, sound reasons for interpreting finality to have attached upon the issuance of our first mandate. The two-year time limit set forth in the former Rule is intended to terminate at a point certain a criminal defendant's ability to obtain a new trial on the ground of newly discovered evidence. The Rule thus balances the defendant's interest in bringing newly discovered evidence to light against the inherent prejudice to the government occasioned by the passage of time. As the Court described in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), "[W]hen a [criminal defendant] succeeds in obtaining a new trial, the " 'erosion of memory" and "dispersion of witnesses" that occur with the passage of time' prejudice the government and diminish the chances of a reliable criminal adjudication." *Id.* at 491, 111 S.Ct. 1454 (citation omitted). The time limit in the former Rule reflects the Court's judgment that, at some point, the prejudicial effects will outweigh the benefits of a new trial. There is no logical reason to suppose that this point arrives earlier for criminal defendants whose convictions and sentences are affirmed on direct appeal than for criminal defendants whose convictions are affirmed but sentences vacated. A defendant's ability to bring newly discovered evidence to light in a new trial in no way hinges on the fate of the sentence imposed on his or her original conviction.

Nor can we think of any other reason that the Supreme Court might have had for offering criminal defendants whose sentences were vacated on direct appeal additional time to file Rule 33 motions.[1] Because a motion for a new trial is a vehicle through which criminal defendants can challenge their convictions, there are efficiency gains in waiting until the *conviction* to be challenged is affirmed on appeal before requiring such a motion to be filed; but because a Rule 33 motion is not also a vehicle through which criminal defendants can challenge their sentences, there is no concomitant benefit in waiting until the *sentence* accompanying the conviction is affirmed. A habeas corpus motion, by contrast, is a mechanism through which criminal defendants can challenge both their convictions and sentences; it therefore makes sense, from an efficiency standpoint, to require criminal defendants to file such motions only after both their convictions and sentences have withstood appellate scrutiny. This difference between habeas and Rule 33 relief explains, in part, why we have interpreted the term final judgment differently in the two contexts.

Notably, the Advisory Committee Notes from the 1998 Amendments, which amended Rule 33 to provide that the filing deadline for motions grounded on newly discovered evidence would run from the "verdict or finding of guilty" instead of from "final judgment," state in relevant part:

> As currently written, the time for filing a motion for new trial on the ground of newly discovered evidence runs from the "final judgment." The courts, in interpreting that language, have uniformly concluded that that language refers to the action of the Court

---

1. As originally proposed by the Advisory Committee, Rule 33 was without a time restriction. The Supreme Court, however, after deliberation, imposed the two-year time limit.

*See Howell v. United States*, 172 F.2d 213, 216 (4th Cir.1949); *United States v. Kaplan*, 101 F.Supp. 7, 13–14 (S.D.N.Y.1951).

of Appeals. It is less clear whether that action is the appellate court's judgment or the issuance of its mandate.... In either case, it is clear that the present approach of using the appellate court's final judgment as the triggering event can cause great disparity in the amount of time available to a defendant to file timely a motion for [a] new trial....

It is the intent of the Committee to remove that element of inconsistency by using the trial court's verdict or finding of guilty as the triggering event....

Fed.R.Crim.P. 33, Advisory Committee Notes, 1998 Amendments (citation omitted). The Committee was thus concerned about the disparity of time available to criminal defendants under the former Rule to file timely motions for new trials premised on newly discovered evidence. Interpreting the former Rule in the manner urged by the defendants would increase this disparity without any concomitant efficiency gain. We have no reason to believe that the Supreme Court, in fashioning the Rule, intended such a result. We therefore conclude that final judgment entered upon the issuance of our first, and not our second, mandate.

The Sixth Circuit in *United States v. Monus*, 356 F.3d 714 (6th Cir.2004), reached the same conclusion. *Monus* presented the question of whether final judgment under the former Rule entered upon the issuance of the court of appeals' mandate, which affirmed the defendant's conviction but vacated his sentence and remanded for resentencing, or upon the entry of the district court's amended judgment, resentencing the defendant. The Sixth Circuit chose the former date, explaining:

[T]he overwhelming weight of authority suggests that [the defendant's] motion was untimely [under the former version of Rule 33]. This is because those circuits that have construed 'final judgment' in this context ... have held that when a defendant's conviction is affirmed but sentence vacated, the two-year time limit runs from the date of the affirmance of the conviction rather than from the date of resentencing.

*Id.* at 717. In support of this interpretation, *Monus* relied on case law from other circuits, holding that final judgment under the former Rule is not delayed by successful collateral attacks on, or technical defects in, the criminal judgment. *Id.*

Indeed, we, along with our sister circuits, have expressly declared that collateral attacks on the judgment entered by the district court do not postpone finality for purposes of the former Rule. As we stated in *Lussier*, "[the defendant's] collateral attack on his conviction and sentence and the district court's modification of [the defendant's] sentence on the basis of that attack are irrelevant to the timeliness of [a] Rule 33 motion." 219 F.3d at 219. Similarly, in *Howell v. United States*, 172 F.2d 213 (4th Cir.1949), the Fourth Circuit rejected the defendant's argument that his successful habeas petition challenging his sentence reset the clock for the filing of a new trial motion under former Rule 33. The court explained:

[W]e do not think that the intention of the rule was to extend the time for making the motion because of a defect in the judgment. A void judgment equally with a valid one would meet the purpose of the rule, which was to fix the time after trial within which the motion should be made; and there would be no sense in permitting the motion after the time so fixed merely because the sentence as entered was technically invalid.

*Id.* at 216. The Eighth Circuit in *United States v. White*, 557 F.2d 1249 (8th Cir. 1977), agreed, reasoning: "The purpose

behind the two-year limitation embodied in Rule 33 is to cut off claims concerning the question of guilt or innocence at a certain time after trial. To allow such a motion at this late date solely because [the defendant] was resentenced would circumvent the purpose behind the rule." *Id.* at 1251.

Courts have also held that technical defects in the judgment are irrelevant for determining finality within the meaning of former Rule 33. In *United States v. Erwin,* 277 F.3d 727 (5th Cir.2001), the Seventh Circuit considered whether the district court's entry of an amended judgment, officially deleting reference to a conviction which had been dismissed years earlier, delayed the running of the two-year time period for the filing of former Rule 33 motions. Relying on the reasoning in *Howell* and *White,* the court ruled in the government's favor. The court elaborated, "This rule does not state that the time for filing a motion will be extended because of a defect in the judgment and we do not believe that this is the rule's intent.... To permit Erwin to file a motion for new trial more than thirteen years after his conviction would circumvent the purpose of the time limitations set forth in the rule." *Id.* at 732–33. Likewise, in *United States v. Biaggi,* 823 F.Supp. 1151 (S.D.N.Y.1993), the court held that our mandate affirming the defendants' convictions, and not the subsequent correction of the sentence in the district court, constituted "final judgment" under the former version of the Rule. *Id.* at 1160.

It is thus clear that "final judgment" as the term is used in the former version of Rule 33 has never been understood to mean absolute finality. The courts of appeals have uniformly held that the purpose of Rule 33 is to establish a fixed time for the filing of motions for new trials premised on newly discovered evidence. To interpret final judgment to enter upon the issuance of the second mandate would delay finality indefinitely and would thus circumvent the Rule's purpose. Accordingly, we hold that the judgment became "final" upon the issuance of our first mandate, affirming the defendants' convictions and remanding for resentencing, and that the defendants' motion for a new trial was thus untimely even if the former Rule applies.

Because we conclude that the defendants' motion would have been untimely under both the former and current versions of the Rule, we need not decide which version applies. The district court was therefore correct in deciding that it was without jurisdiction to hear the defendants' motion.

### CONCLUSION

For the foregoing reasons, we affirm the district court's denial of the defendants' Rule 33 motion for a new trial.